# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES THOMPSON, | 1:07-cv-01178-OWW-TAG HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS FOR LACK OF RIPENESS (Doc. 5) |
| v. | |
| WARDEN DENNIS SMITH, et al., | |
| Respondents. | ORDER REQUIRING THAT OBJECTIONS BE FILED WITHIN FIFTEEN DAYS |
| | ORDER DENYING PETITIONER'S MOTION FOR STAY (Doc. 6) |

Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**FACTUAL AND PROCEDURAL HISTORY**

On August 13, 2007, Petitioner filed a petition for writ of habeas corpus. (Doc. 1). Petitioner alleges that, as an inmate at the Federal Prison Camp, Atwater, California, the Bureau of Prisons ("BOP") has refused to provide him with an immediate assessment pursuant to 18 U.S.C. § 3621(b), to determine if he is eligible for pre-release placement at a Residential Re-entry Center ("RRC"). (Doc. 1, pp. 3-4). Petitioner alleges that the BOP's failure to provide such an assessment is in violation of federal law, i.e., § 3621(b). (Doc. 1, p. 6). Petitioner further alleges that he is not a threat to society, nor a flight risk. (Id.). Petitioner contends that Program Statement 7310.04 is used to circumvent the BOP's reliance only upon the criteria in § 3621(b). (Doc. 1, pp. 8-9). Petitioner seeks an order from this Court that the BOP be required to conduct an immediate RRC placement

assessment without regard to Program Statement 7310.04 or 28 C.F.R. §§ 570.20-21, and based solely on the criteria in 18 U.S.C. § 3621(b).  (Doc. 1, p. 10).

On October 16, 2005, Respondents filed the instant motion to dismiss, alleging that the petition is premature because the BOP is not legally required to evaluate Petitioner for placement in an RRC until eleven to thirteen months before his release date.  (Doc. 5, p. 2).  Respondents have submitted a copy of "Program Statement 7310.04, <u>Community Correction Center (CCC) Utilization and Transfer Procedure</u>, (12-16-1998)" ("Program Statement").  (Doc. 5-3).  The Program Statement sets forth procedures for placement of prisoners in RRC's by the BOP.  (<u>Id.</u>).  That document also provides that, "[n]ormally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program."  (<u>Id.</u> at ¶ 12.).

Respondents contends that Petitioner's release date is not until October 8, 2009, if given credit for all possible good time, presently eighteen sixteen months hence.  (Doc. 5, p. 2; Doc. 5-2, p. 4).  Respondents observe that this Court has previously held that the disputed program statement does not run afoul of § 3621(b), and has recommending granting similar motions to dismiss for lack of ripeness under virtually identical circumstances.  (Doc. 5, p. 4).  Because the program statement does not require the BOP to make an assessment in Petitioner's case for almost seven more months, in Respondents' view, the petition is not ripe and should be dismissed as premature.  (<u>Id.</u> at p. 4).

Petitioner has not directly opposed the motion to dismiss; however, on October 25, 2007, Petitioner filed a motion to stay proceedings in his case until the United States Court of Appeals for the Ninth Circuit decides two unrelated appeals that Petitioner contends raise the same issue as in his case. (Doc. 6, pp. 1-2).

**JURISDICTION**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  <u>See</u> 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  <u>See</u> e.g., <u>Capaldi v. Pontesso</u>, 135 F.3d 1122, 1123 (6th Cir. 1998); <u>Kingsley v. Bureau of Prisons</u>, 937 F.2d 26, 30 n.5 (2nd Cir.

1991); United States v. Jalili, 925 F.2d 889, 893-894 (6th Cir. 1991); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).  To receive relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  See e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-894 (asserting petitioner should be housed at a community treatment center); Barden v. Keohane, 921 F.2d 476, 479 (3rd Cir. 1990) (as amended) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parol).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  Brown, 610 F.2d at 677.

In this case, Petitioner alleges that the BOP's failure to conduct an immediate RRC placement assessment for Petitioner violates the federal courts' interpretation of the 2002 and 2005 regulations and the BOP's exercise of discretion under § 3621(b).  Petitioner is therefore challenging the legality of the manner in which his sentence is being executed.  Thus, his petition is proper under 28 U.S.C. § 2241.  In addition, because Petitioner is incarcerated at the Federal Prison Camp, Atwater, California, which is within the Eastern District of California, Fresno Division, this Court has jurisdiction to proceed to the merits of the petition.

## EXHAUSTION

A preliminary question is whether Petitioner has exhausted available administrative remedies.  Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. McCarthy v. Madigan, 503 U.S. 140, 144-145, 112 S.Ct. 1081 (1992); Western Radio Services Co. v. Espy, 79 F.3d 896, 899 (9th Cir. 1996); Martinez v. Roberts, 804 F.3d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).

The exhaustion prerequisite for filing a § 2241 petition is judicially created; it is not a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other

grounds, Reno v. Koray, 515 U.S. 50, 54-55, 115 S. Ct. 2021 (1995).  Thus, "[b]ecause exhaustion is not required by statute, it is not jurisdictional."  Brown, 895 F.2d at 535.  If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits,  or require the petitioner to exhaust his administrative remedies before proceeding in court."  Id.; McCarthy v. Madigan, 503 U.S. 140, 144-145, 112 S. Ct. 1081 (1992), superceded on other grounds, 42 U.S.C. §1997(e).

One of the purposes of administrative exhaustion is to allow the agency an opportunity to remedy its own mistakes before being haled into court, and this applies with particular force when the challenged action involves an exercise of the agency's discretionary power.  See McCarthy v. Madigan, 503 U.S. at 145.  Thus, exhaustion of administrative remedies would be futile and should be excused if the agency lacks authority to grant the requested relief or has predetermined the issued before it.  See id. at 148.

Here, Petitioner concedes that he has not exhausted his administrative remedies, but does contend that exhaustion would be futile. (Doc. 1, p. 5).  Respondents have not addressed the issue.  As mentioned, however, futility is an exception to the exhaustion requirement.  Laing v. Ashcroft, 370 F.3d 994, 1000-1001 (9th Cir. 2004).  In the instant action, it is apparent that it would be futile for Petitioner to exhaust his administrative remedies because he alleges he is being denied an immediate RRC placement based on formally-adopted BOP regulations, including the Program Statement defining the RRC placement process, the validity of which BOP strenuously maintains.  In the Court's view, therefore, Petitioner's exhaustion of his administrative remedies is not a pre-requisite to the District Court's jurisdiction over the case because of the BOP's intractable and immutable policy against the relief sought.

## DISCUSSION

Article III of the United States Constitution limits the federal courts to deciding "cases" and "controversies."  To ensure that any matter presented to a federal court meets that requirement, the Court considers the doctrines of sanding, ripeness, and mootness.  See Poe v. Ullman, 367 U.S. 497, 502-505, 81 S. Ct. 1752 (1961).  The most important of these doctrines is standing.  See Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315 (1984).  As a manifestation of the Article III case-or-

controversy requirement, standing is a determination of whether a specific person is the proper party to invoke the power of a federal court. Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975). To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen, 468 U.S. at 751. The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,'" not conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)(citations omitted).

Closely related to standing is the issue of ripeness. The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-149, 87 S. Ct. 1507 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980 (1977). The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of specific future harm. Laird v. Tatum, 408 U.S. 1, 14, 92 S.Ct. 2318 (1972). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998)(internal citations omitted).

The Court agrees with Respondents that Petitioner's claim is not ripe and that, therefore, he presently lacks standing under Article III. Even assuming, arguendo, that the petition properly challenges the validity of the Program Statement, that regulation does not, as Petitioner has suggested, improperly limit the discretion of BOP to make an RRC placement in any individual case. Rather, the regulation only requires that the BOP make an RRC placement assessment *at least* eleven to thirteen months prior to the inmate's release date. Nothing in the Program Statement prevents the BOP, in the exercise of its statutory discretion, from making an earlier determination, although the

U.S. District Court
E. D. California

5

Court is not aware of any statute or regulation that requires such expedited action by the BOP. In other words, the Program Statement simply insures that inmates will receive an RRC assessment sufficiently in advance of their release date to permit them to make appropriate plans prior to their transfer. Because the Program Statement does not limit or otherwise intrude on the BOP's exercise of discretion in making its RRC assessment, the Program Statement is not in any way analogous to the 2002 and 2005 regulations that many courts, including this one, have found to be an illegal limitation on the discretion vested in the BOP by § 3621(b).[1]

Because Petitioner's release date is October 8, 2009, the Program Statement does not *require* that the assessment team meet to consider Petitioner's RRC placement until November 2008, approximately seven months from now. Because Petitioner is not presently entitled to an RRC assessment under the applicable BOP regulation, he cannot show either a specific present objective harm or the threat of specific future harm. Laird, 408 U.S. at 14. Moreover, even Petitioner's release date is only tentative at this point; events could transpire between now and October 8, 2009 that would result in the postponement of Petitioner's release date to a more distant point in time. For this reason, Petitioner's claim of a right to an immediate assessment rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. at 300. Thus, the claim is not ripe.

Moreover, the Court is unaware of any authority requiring the BOP to conduct its RRC eligibility reviews or immediately transfer a prisoner to an RRC facility *on demand of the prisoner*. While case law from this Court strongly suggests that Petitioner is entitled to an RRC assessment

---

[1] Moreover, a habeas claim cannot be sustained based solely upon the BOP's purported violation of its own Program Statement. Under 28 U.S.C. § 2241, a petitioner's custody need not be in violation of the Constitution; a violation of federal law is sufficient. See 28 U.S.C. § 2241(c)(3). However, the violation of a BOP Program Statement is not a violation of federal law. Program Statements are "internal agency guidelines [that] may be altered by the Bureau at will" and that are not "subject to the rigors of the Administrative Procedure Act, including public notice and comment." Jacks v. Crabtree, 114 F.3d 983, 985 n. 1 (9th Cir.1997). BOP Program Statements are simply interpretive rules. Reno v. Koray, 515 U.S. at 61. "[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party." United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990); see also, e.g., Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468 (1981) (Social Security Administration Manual was only regulation, had no legal force, and did not bind government); United States v. Busher, 817 F.2d 1409, 1411 (9th Cir.1987) (United States Attorneys' internal guidelines do not create any rights enforceable at law); Thompson v. United States, 592 F.2d 1104, 1110 (9th Cir.1979) (government safety manual or safety programs do not grant right to have them followed); United States v. Caceres, 440 U.S. 741, 99 S. Ct. 1465 (1979) (failure to follow internal IRS regulations did not violate federal law).

made independently of the 2002 and 2005 regulations, Petitioner cites no authority for the proposition that he has either a statutory or constitutional right to an immediate assessment or transfer.

Finally, for good reason, the Court is reticent to micro-manage the BOP regarding inmate RRC assessments and placements. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment....Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life...." Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995). In Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800 (1974), overruled in part on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413, 109 S.Ct. 1874 (1989), the Supreme Court explained the basis for this deference:

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism.

Procunier, 416 U.S. at 404-405

In the instant motion to dismiss, Respondents indicate that the BOP is "well-aware of the Court's ruling that RRC placement evaluations must be made without reference to 28 C.F.R. §§ 570.20-21 and has been making its evaluations on that basis." (Doc. 5, p. 5). Respondents also indicate that "[i]n all likelihood, petitioner will receive an evaluation of that type while he still has at least 11 months to go before his good conduct release date." (Id.). Petitioner has given the Court no reason to doubt the BOP's representations to the Court in that regard such that this Court should expend its limited resources to oversee the BOP's conduct of future RRC assessments.

In light of the foregoing, the Court will recommend that Respondents' motion to dismiss be granted and that the petition for writ of habeas corpus be dismissed without prejudice. Petitioner

may re-file this habeas action if the BOP's final decision regarding Petitioner's RRC placement fails to comply with current federal case law construing § 3621(b) and the applicable BOP regulations. Because the Court is recommending dismissal without prejudice to refiling when the claim is ripe, Petitioner's motion for a stay pending the decision of the Ninth Circuit in other cases will be denied.

## ORDER

Therefore, the Court HEREBY ORDERS that Petitioner's motion for stay of proceedings (Doc. 6), is DENIED.

## RECOMMENDATIONS

Accordingly, the Court RECOMMENDS that:

1. Respondents' Motion to Dismiss (Doc. 5), be GRANTED;

2. The Petition for Writ of Habeas Corpus (Doc. 1), be DISMISSED without prejudice, as not ripe; and

3. The Clerk of Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 10, 2008**                              /s/ Theresa A. Goldner
                                                         UNITED STATES MAGISTRATE JUDGE